UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 08-CV-1809 (JFB)

HECTOR ALEJANDRO,

Petitioner,

VERSUS

JAMES BERBARY, COLLINS CORRECTIONAL FACILITY,

Respondent.

**MEMORANDUM AND ORDER**
May 21, 2010

JOSEPH F. BIANCO, District Judge:

Hector Alejandro (hereinafter, "Alejandro" or "petitioner") petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2007 order of the County Court of Suffolk County denying his motion for re-sentencing under the 2005 amendments to the New York Drug Law Reform Act. Petitioner argues that the County Court's ruling violated various federal and state constitutional provisions. Specifically, petitioner argues that the state court violated: (1) his due process rights under the Fifth and Fourteenth Amendments; (2) his equal protection rights under the Fourteenth Amendment; (3) his equal protection rights under the New York Constitution; and (4) his right to be free from cruel and unusual punishment under the Eighth Amendment. For the reasons set forth below, the petition is denied in its entirety as procedurally barred from review and without merit.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Petitioner's 1987 Conviction and Subsequent Criminal History

On June 5, 1987, petitioner pled guilty to one count of Criminal Sale of a Controlled Substance in the Second Degree, a class A-II felony, in violation of New York Penal Law § 220.41. Pursuant to the Rockefeller Drug Laws, a statutory drug sentencing scheme enacted in 1973, petitioner was sentenced to an indeterminate term of imprisonment of four years to life.

Petitioner did not seek direct appeal of his conviction or sentence, and the record indicates that the petitioner did not take any subsequent action with respect to this sentence until 2007. (Pet. at 4.)

Since petitioner's 1987 conviction, he has been convicted of several parole violations and criminal offenses. (Resp. Return at 1-2.) After being granted parole on March 25, 1991, petitioner was subsequently re-incarcerated for a parole violation. (*Id.*) Petitioner was eventually re-paroled, but on May 22, 1996, he was imprisoned for sixty more days after pleading guilty to one count of Criminal Possession of a Controlled Substance in the Seventh Degree in violation of New York Penal Law § 220.07. (*Id.* at 2.) On September 20, 1996, petitioner pled guilty to one count of Attempted Criminal Possession of a Controlled Substance in the Fifth Degree in violation of New York Penal Law § 220.06. (*Id.*) Petitioner was sentenced to the indeterminate term of imprisonment of one and one-half to three years, and his parole was revoked on October 8, 1996. (*Id.*) After being re-paroled on May 11, 1999, petitioner pled guilty to two counts of Sex Abuse in the First Degree in violation of New York Penal Law § 130.65 and one count of Endangering the Welfare of a Child in violation of New York Penal Law § 260.10. (*Id.*) Based on his plea, entered on March 17, 2000, petitioner was sentenced to two determinate and concurrent terms of imprisonment: (1) three years with five years post-release supervision for the felony convictions, and (2) one year for the misdemeanor conviction. (*Id.*) Petitioner is currently incarcerated pursuant to his 1987 conviction.[1]

---

[1] Petitioner has since been denied parole several times. (Resp. Br. at 4.)

B. Drug Law Reform Act

In 2004, the New York legislature enacted the Drug Law Reform Act (hereinafter "2004 DLRA") to ameliorate the sentencing provisions of the Rockefeller Drug Laws by, among other things, permitting non-violent felony drug offenders convicted of class A-I offenses prior to the date of the law's enactment to re-apply for determinate sentences. *See* Drug Law Reform Act, ch. 738, § 23, 2004 N.Y. Sess. Laws 1474-75 (McKinney); *see also People v. Pauly*, 799 N.Y.S.2d 841, 843 (App. Div. 2005). The 2005 amendments to the DLRA (hereinafter "2005 DLRA") expanded the determinate sentencing scheme, allowing defendants convicted of class A-II felony drug offenses to apply for re-sentencing provided they meet various eligibility criteria. In relevant part, the 2005 DLRA provides:

> [A]ny person in the custody of the department of correctional services convicted of a class A-II felony offense defined in article 220 of the penal law which was committed prior to the effective date of this section, and who was sentenced thereon to an indeterminate term of imprisonment with a minimum period not less than three years pursuant to provisions of the law in effect prior to the effective date of this section, and who is more than twelve months from being an eligible inmate as that term is defined in subdivision 2 of section 851 of the correction law, and who meets the eligibility requirements of paragraph (d) of subdivision 1 of section 803 of the correction law may . . . apply to be resentenced in accordance with section 70.71 of the penal law in the court which imposed the original sentence.

2

Drug Law Reform Act, ch. 643, § 1, 2005 N.Y. Sess. Laws 1581-82 (McKinney); *People v. Williams*, 850 N.Y.S.2d 717, 718 (App. Div. 2008).[2]

C. Petitioner's 2007 Motion
for Re-sentencing

Pursuant to the 2005 DLRA, petitioner submitted an application for re-sentencing to the County Court on November 19, 2007. By order dated December 20, 2007, the County Court denied petitioner's application, finding that petitioner had failed to show that he was eligible for re-sentencing under the 2005 DLRA. Specifically, the County Court noted that petitioner's "parole has been revoked several times since 1991 for various crimes committed by him each time he was granted parole," and, therefore, petitioner was not eligible for re-sentencing. *People v. Alejandro*, No. 1643-99 (Suffolk County, Court, Dec. 20, 2007) (citing *People v. Bautista*, 809 N.Y.S.2d 62 (App. Div. 2006)). Petitioner did not appeal the County Court's ruling.

D. The Instant Petition

On April 4, 2008, *pro se* petitioner filed an application in the United States District Court for the Western District of New York for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The case was transferred to this Court because Suffolk County was the site of petitioner's conviction and sentencing. *Alejandro v. Berberry*, No. 08-CV-0277F (Apr. 16, 2008) (order transferring case); *see also Naum v. Brown*, 604 F. Supp. 1186, 1188 (E.D.N.Y. 1985) (transferring habeas petition to judicial district in which the conviction and sentencing of the petitioner took place). This Court issued an Order to Show Cause on May 14, 2008. Respondent filed an opposition on July 22, 2008. Petitioner submitted a reply on August 4, 2008. This matter is fully submitted.[3]

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

---

[2] The New York Court of Appeals has held that, reading the 2005 DLRA together with the Correction Law, "in order to qualify for resentencing under the 2005 DLRA, class A-II felony drug offenders must not be eligible for parole within three years of their resentencing applications." *People v. Mills*, 901 N.E.2d 196, 201 (N.Y. 2008) (collecting cases). With respect to the additional eligibility requirements referred to in the 2005 DLRA, the New York Correction Law provides, *inter alia*, that merit time allowance "shall be withheld for any serious disciplinary infraction . . . ." N.Y. Correct. Law § 803(1)(d)(iv); *see also People v. Paniagua*, 841 N.Y.S.2d 506, 513-14 (App. Div. 2007).

[3] Although not filed as a separate motion, petitioner also requests the appointment of counsel. The Court has considered petitioner's request based on the circumstances of this case, including a consideration of the factors set forth in *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986), and concludes that the appointment of counsel is unwarranted in this case. Petitioner also requests an evidentiary hearing. Because petitioner has made no showing that his claim relies on "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2), the request for an evidentiary hearing is denied.

Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

For the reasons set forth below, the Court concludes that petitioner's claim is procedurally barred from review and, in any event, is without merit.

#### A. Procedural Bar

##### 1. Legal Standard

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies

4

available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), a petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996) and *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

2. Application

In the instant case, petitioner has failed to satisfy the exhaustion requirement because, as he concedes, he did not seek leave to appeal the County Court's denial of his re-sentencing application.[4] (*See* Pet. Reply Mem. at iv.) "[S]tate review ends when the state courts have finally resolved an application for state postconviction relief." *Roper v. Weaver*, 550 U.S. 598, 601 (2007) (quotation omitted). As neither the Appellate Division nor the Court of Appeals has had the opportunity to review the grounds for habeas relief presented in the instant petition, petitioner's request for relief has not been "finally resolved" by New York States courts, and his petition is therefore unexhausted. *See id.*

When claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is absence of available State corrective process"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the

---

[4] Respondent argues that petitioner also failed to present to the County Court the constitutional issues he now raises in his habeas petition. However, the record reveals that petitioner did, in fact, raise these issues before the County Court. (Br. in Supp. of Re-sentencing, Nov. 19, 2007.) In any event, because petitioner did not appeal the County Court's decision, the instant petition is procedurally barred from review, as discussed *infra*.

6

claim exhausted." *Aparico*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). Here, not only has the time for filing leave to appeal to the Appellate Division expired, but petitioner is also barred from filing an application for an extension of time within which to seek leave to appeal.[5] Because petitioner no longer has any state remedies available to him with respect to the denial of his motion for re-sentencing, he meets the technical requirements for exhaustion. *Coleman*, 501 U.S. at 732. However, petitioner's claims are procedurally defaulted. *See Thomas v. Grenier*, 111 F. Supp. 2d 271, 276-78 (E.D.N.Y. 2000) (failure to appeal denial of a collateral motion within the thirty-day statutory period resulted in procedural default, barring federal habeas review); *Castillo v. Hodges*, No. 01-CV-2172 (SAS), 2004 WL 613075, at *5 (S.D.N.Y. Mar. 29, 2004) ("Because petitioner failed to appeal the denial of his . . . [collateral] motion, the claims raised therein are deemed exhausted. However, the claims are also procedurally forfeited. Accordingly, application of the procedural bar rule mandates the dismissal of petitioner's . . . claims.").

Thus, the Court can review petitioner's claims only if petitioner shows cause for the default, and prejudice resulting therefrom, or shows that a fundamental miscarriage of justice would occur if these claims are not reviewed by this Court. Petitioner asserts that he did not seek leave to appeal because "the Appellate Court would not and could not provide any relief." (Pet. Reply Mem. at 3.) However, petitioner's argument that exhaustion was unnecessary because his appeal likely would have failed is insufficient as a matter of law. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause [for procedural default] if it means simply that a claim was unacceptable to that particular court at that particular time." (quotation omitted))); *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) ("[A] petitioner may not bypass state courts merely because they may be unreceptive to the claim." (citing *Bousley*, 523 U.S. at 623, and *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998))). Thus, because petitioner has not provided a satisfactory explanation for his failure to appeal the denial of his motion for re-sentencing, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, the instant petition is barred from review by this Court. In any event, the claims are without merit for the reasons discussed *infra*.

B. Review on the Merits

Although, as discussed above, the petition is procedurally barred from federal habeas review, the Court has, in an abundance of caution, considered petitioner's claims on the merits and

---

[5] Petitioner was entitled to seek permission to appeal to the Appellate Division within thirty days of the entry of the County Court's order denying the application for re-sentencing. N.Y. Crim. Proc. Law § 460.10(4). Petitioner had one year from the expiration of the above-discussed thirty day period to seek permission to file a late leave application. N.Y. Crim. Proc. Law § 460.30(1). The one-year extension for seeking permission to file late leave of appeal is inflexible. *See, e.g.*, *Shomo v. Maher*, No. 04-CV-4149 (KMK), 2005 WL 743156, at *5 (S.D.N.Y. Mar. 31, 2005) ("We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them." (quoting *People v. Thomas*, 47 N.Y.2d 37, 43 (N.Y. 1979))). Thus, petitioner's time to seek appellate review of the December 20, 2007 decision has expired.

concludes that there is no basis for habeas relief. The County Court denied petitioner's motion for re-sentencing on the merits and, therefore, AEDPA deference applies.[6] Because the state court ruling was not contrary to, or an unreasonable application of, clearly established federal law, this Court rejects petitioner's claims on the merits.

---

[6] Although the County Court did not explicitly rely on federal law in denying the motion, it is clear that the state court disposed of petitioner's claim on substantive, as opposed to procedural, grounds. *See Eze v. Senkowski*, 321 F.3d 110, 121-22 (2d Cir. 2003) ("To adjudicate a claim on the merits, the state court need not mention the argument raised or cite relevant case law, or even explain its reasoning process. Rather, a state court adjudicates a claim on its merits by (1) disposing of the claim 'on the merits,' and (2) reducing its disposition to judgment." (internal citations, quotations, and alterations omitted)); *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) ("Although it denied [petitioner's] motion for a writ of coram nobis without referring explicitly to the Sixth Amendment or relevant federal case law, the Appellate Division indicated that [petitioner's] 'ineffective assistance of counsel' claim was 'denied.' There is no basis for believing that the Appellate Division rejected the claim on non-substantive grounds. Accordingly, we conclude that the Appellate Division's adjudication was 'on the merits' . . . ."). Petitioner raised his federal claims in his brief to the County Court, thus apprising the court of the federal nature of his claims. Furthermore, in support of its decision, the County Court cited *People v. Bautista*, 809 N.Y.S.2d 62 (App. Div. 2006), which considered and rejected a constitutional challenge to the 2005 DLRA on grounds similar to those raised by petitioner. Therefore, this Court concludes that the County Court's ruling was "on the merits" for purposes of AEDPA. In any event, even if the Court considered petitioner's claims *de novo*, the Court would conclude that they are all without merit for the reasons discussed *infra*.

1. Due Process Claim

Petitioner argues that the County Court's denial of his motion for re-sentencing violates his due process rights under the Fifth and Fourteenth Amendments.[7] As discussed *supra*, the 2005 DLRA allowed for the re-sentencing of some, but not all, class A-II offenders. Petitioner argues, essentially, that due process requires that the re-sentencing provisions of the 2005 DLRA apply to all A-II offenders, regardless of whether the offenders meet the specific eligibility requirements set forth in the statute. For the reasons set forth below, the Court concludes that petitioner's argument is without merit.

As a general matter, "[t]he principle that statutes operate only prospectively, while

---

[7] Petitioner does not argue that he is, in fact, eligible for re-sentencing under the 2005 DLRA as written. (*See, e.g.*, Pet. at 24; Pet. Reply Mem. at 3-4.) Instead, petitioner appears to challenge the constitutionality of the statute itself; the Court rejects that argument for the reasons discussed *infra*. To the extent petitioner does challenge the County Court's assessment of his eligibility for re-sentencing under the terms of the 2005 DLRA, there is no basis to conclude that the state court erred. As discussed *supra*, in order to be eligible for re-sentencing under the 2005 DLRA, a prisoner must be at least three years away from parole eligibility and must be eligible for merit time. Respondent states that petitioner's name does not appear on a New York Department of Corrections list of eligible A-II drug offenders with thirty-six months or longer until their parole eligibility date. (*See* Respondent's Br. at 18; *see also* Brennan Aff., Dec. 18, 2007, Ex. A.) Furthermore, petitioner has also committed various disciplinary violations while incarcerated. (*See* Brennan Aff., Ex. B.) In any event, even if the County Court had erred in its application of the 2005 DLRA, federal habeas corpus relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

8

judicial decisions operate retrospectively, is familiar to every law student." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) (citation omitted); *see also United States v. Smith*, 354 F.3d 171, 173-74 (2d Cir. 2003) (affirming the re-sentencing of a defendant under a federal supervised release statute in effect at the time of the original commission of the offense despite the fact that the statute had subsequently been amended in a way that would have been of benefit to defendant). Under New York law, the "amelioration doctrine" provides that "a statutory amendment reducing the punishment for a particular crime is generally to be applied to all cases decided after the effective date of the enactment – even though the underlying act may have been committed before that date – *except* when the Legislature, in enacting the amendment, has expressed a contrary intent." *People v. Utsey*, 855 N.E.2d 791, 792-93 (N.Y. 2006). However, "[a]n ameliorative amendment generally 'cannot be applied in favor of an offender tried and sentenced to imprisonment before its enactment. This inevitably follows from the settled rule that, once final judgment has been pronounced, a change in the law does not arrest or interfere with execution of the sentence.'" *Id.* at 794 (citations omitted).

It is now well settled that, with limited exceptions, the DLRA does not apply retroactively to sentencing for crimes committed prior to the statute's effective date. *See United States v. Darden*, 539 F.3d 116, 120 (2d Cir. 2008) ("The [2004] Reform Act, however, did not become effective until January 13, 2005, and the current sentencing laws do not apply to crimes committed before the effective date." (citing *Utsey*, 855 N.E.2d at 793)); *Utsey*, 855 N.E.2d at 794 ("Under the plain language of the statute, the relevant provisions of the DLRA are intended to apply only to crimes committed after its effective date."); *see also Maldonado v. Craig*, No. 07-CV-252 (LEK/VEB), 2008 WL 5243894, at *2 n.2 (N.D.N.Y. Dec. 16, 2008) ("[B]y its express terms, the [2004] DLRA was not to be applied retroactively to crimes committed before the date it took effect.") (adopting Report and Recommendation); *United States v. Williams*, 462 F. Supp. 2d 342, 343 (E.D.N.Y. 2006) ("With limited exceptions for A-I and A-II felons, the ameliorative effects of the Reform Act are prospective only."). In short, the DLRA does not, by its terms, apply retroactively.

Petitioner argues that, despite the clear language of the statute, the DLRA re-sentencing provisions should be applied retroactively to him. *See, e.g.*, *Utsey*, 855 N.E.2d at 794 ("[D]efendants . . . argue, in effect, that the Legislature should have made the DLRA retroactive, and that under a fairer sentencing scheme they would have received lesser sentences. But whether the Legislature might or should have enacted broader reform is irrelevant to the only question before us – whether defendants were meant to be included within the more limited reform the Legislature did enact."). In support of his retroactivity argument, petitioner cites *Schiro v. Summerlin*, 542 U.S. 348 (2004), *Bousley v. United States*, 523 U.S. 614 (1998), and *Teague v. Lane*, 489 U.S. 288 (1989). However, these decisions relate to the retroactive application of judicial decisions, not the retroactive application of criminal statutes themselves. Petitioner's argument, therefore, that the Court should apply the state statute retroactively, is without merit.[8] *See Darden*,

---
[8]

Petitioner also argues that the DLRA made changes to the substantive definition of offenses in Sections 220.18 and 220.21 of the New York Penal Law, and that he should be given the benefit of these changes. (*See* Pet. at 14-16.) As a

539 F.3d at 128 ("The state's decision not to make its current sentencing laws retroactive – but rather to redress the inequities created by the state's 'inordinately harsh' sentencing laws through other ameliorative provisions – is a remedial decision . . . ."); *see, e.g.*, *Lacewell v. Berbary*, No. 08-cv-2440 (DLI), 2009 WL 3233140, at *8 n.3 (E.D.N.Y. Oct. 2, 2009) (denying habeas petition and holding that, because petitioner committed his crime prior to the effective date of the 2004 DLRA, petitioner was properly sentenced under the earlier law). Accordingly, the Court rejects petitioner's due process challenge to the application of the 2005 DLRA.[9]

2. Federal Equal Protection Claim

Petitioner next asserts that the 2005 DLRA treats him differently from class A-I drug offenders, and, therefore, violates his Fourteenth Amendment right to equal protection. As set forth below, this claim also fails on the merits.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *Latrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). As the Second Circuit has held, prisoners are not considered a suspect class for purposes of equal protection review. *See Lee v. Governor of the State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996) ("[P]risoners either in the aggregate or specified by offense are not a suspect class." (applying rational basis test to equal protection claim by prisoners relating to eligibility for temporary release)); *see also Duemmel v. Fischer*, No. 09-0468-pr, 2010 WL 726306, at *1 (2d Cir. Mar. 3, 2010) (citing *Lee*, 87 F.3d at 60). Therefore, the statute will be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Tarbe v. Berkel, Inc.*, 196 F.3d 136, 137 (2d Cir. 1999) (per curiam) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)); *Connelly v. McCall*, 254 F.3d 36, 42 (2d Cir. 2001). Under the rational-basis standard, a legislative classification is "accorded a strong presumption of validity," and satisfies constitutional standards "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 319-20 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S 307, 313 (1993)). Thus, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (internal quotation marks omitted)); *Connelly*, 254 F.3d at 42.

Here, the 2004 DRLA permits the automatic re-sentencing of class A-I drug offenders. The 2005 DLRA extends the opportunity for re-sentencing to A-II offenders, but only if they meet certain eligibility criteria. The Court rejects petitioner's argument that it is irrational to

---

threshold matter, petitioner was not convicted under either of these statutory provisions *(see, e.g.*, Pet. Return at 2); petitioner was convicted under Section 220.41, which remains substantively unchanged by the DLRA. In any event, to the extent petitioner argues that any other provisions of the DLRA should be applied retroactively to him despite the clear language of the statute, the Court rejects that argument for the reasons discussed *supra*.

9

To the extent petitioner's due process argument relates to the disparate treatment of A-I and A-II offenders, the Court rejects that argument for the reasons discussed *infra* in connection with petitioner's equal protection claim.

10

allow re-sentencing for those convicted of more serious crimes but not to allow it for those, like petitioner, convicted of lesser offenses. As numerous courts have held, "the State may have had policy reasons for offering new sentences for those [drug offenders] who faced the harshest punishment and providing only ameliorative provisions for the rest in the form of 'merit time allowances.'" *United States v. Hammons*, 438 F. Supp. 2d 125, 130 (E.D.N.Y. 2006) (citing *People v. Pauly*, 799 N.Y.S.2d 841, 843 (App. Div. 2005)); *id.* at 130 ("Were the statute made fully retroactive to all classes of felonies, implementing this provision to possibly thousands of cases would be an enormous burden on the state court system."); *see also Mendoza v. Miller*, No. 9:04-CV-1270 (LEK), 2008 WL 3211277, at *8 (N.D.N.Y. Aug. 6, 2008) ("[E]xtending such relief [automatic re-sentencing] 'to those facing the harshest of the Rockefeller law sentences is consistent with the spirit of the statute even as it protects state courts from an administratively burdensome rush of petitions for re-sentencing.'" (quoting *Williams*, 462 F. Supp. 2d at 347 n.5)); *see also People v. Paniagua*, 841 N.Y.S.2d 506, 515-16 (App. Div. 2007) ("The distinctions drawn by the Legislature in reforming the drug laws are entirely reasonable.") (rejecting due process and equal protection challenge to 2005 DLRA). Accordingly, although the DLRA differentiates between A-I and A-II offenders, and between certain A-II offenders,[10] the law is rationally related to the legitimate government purpose of providing ameliorative relief to prisoners facing the lengthiest sentences under the Rockefeller drug laws.

In short, the Court rejects petitioner's equal protection argument on the merits.

### 3. State Equal Protection Claim

Petitioner also contends that his continued incarceration violates his equal protection rights under the New York Constitution, arguing the same grounds advanced under his federal equal protection claim. It is well established, however, that federal habeas relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also DiGuglielmo v. Smith*, 366 F.3d 130, 136-37 (2d Cir. 2004); *Lydon v. Kuhlman*, 62 F. Supp. 2d 974, 977-78 (E.D.N.Y. 1999). Because petitioner's claim alleges the denial of his rights under the New York Constitution, it does not provide a basis for federal habeas relief.[11]

---

[10] Although petitioner challenges only the disparity of treatment between class A-I and class A-II offenders, the Court also concludes that the differential treatment between certain A-II offenders does not violate equal protection. The differential treatment of A-II offenders based on the length of time before their parole eligibility is rationally related to a legitimate government purpose. *See People v Bautista*, 809 N.Y.S.2d 62, 63 (App. Div. 2006) ("[T]he distinction is rationally related to the valid state objective of ameliorating the conditions of those A-II offenders facing the longest prison time."), *appeal dismissed by* 7 N.Y.3d 838 (N.Y. 2006). Furthermore, with respect to the requirement that an A-II offender be eligible for merit time in order to apply for re-sentencing, the legislature could rationally have decided to provide relief to those defendants "best prepared for reentry into society." *Paniagua*, 841 N.Y.S.2d at 515-16.

[11] In any event, Article 1, section 11 of the New York Constitution "appears analogous to the federal Equal Protection Clause," *see Wiesner v. Nardelli*, No. 06-CV-3533 (HB), 2007 WL 211083, at *3 n.11 (S.D.N.Y. Jan. 27, 2007), and so the Court's federal equal protection analysis would apply to this claim as well.

### 4. Cruel and Unusual Punishment

Finally, petitioner argues that his continued incarceration contravenes the Eighth Amendment's prohibition of cruel and unusual punishment. For the reasons set forth below, the Court disagrees and finds no basis for habeas relief in connection with petitioner's sentence on that ground.

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, bans excessive prison terms that are "grossly disproportionate" to the crime committed. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Ewing v. California*, 538 U.S. 11, 20-21 (2003). The "grossly disproportionate" standard, however, is "applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Moreover, a sentence does not run afoul of the Eighth Amendment's prohibition of "cruel and unusual punishments" if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Mendoza*, 2008 WL 3211277, at *9 (denying the Eighth Amendment claim of a drug offender sentenced to an indeterminate term because petitioner's sentence was "within the statutory limits in place at the time of his conviction and sentence").

Here, petitioner's sentence falls within the statutory range prescribed by state law at the time of the original offense. In 1987, petitioner was convicted of one count of Criminal Sale of a Controlled Substance in the Second Degree, N.Y. Penal Law § 220.41, which called for an indeterminate sentence of a minimum term of three years imprisonment and a maximum term of life imprisonment. Accordingly, petitioner was sentenced to an indeterminate term of four years to life. Although the Rockefeller Drug Laws have been subsequently amended, the retroactive provisions of the 2005 DLRA, as discussed *supra*, did not extend to petitioner, and thus, his 1987 sentence of four years to life still falls within the limits authorized by statute. *See Mendoza*, 2008 WL 3211277, at *5 (finding that, because the DLRA did not apply to the defendant, "[t]he sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction"). Thus, petitioner's incarceration does not violate the Eighth Amendment's prohibition of cruel and unusual punishment. As petitioner's sentence falls within the range established by state law, his claim does not present a basis for federal habeas relief.[12]

\*\*\*

In sum, the Court concludes that the instant petition is procedurally barred from review. In any event, the claims are substantively without merit because the state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Even if the Court considered petitioner's claims *de novo*, the Court would conclude that they are all without merit for the reasons discussed *supra*. Thus, the petition is denied in its entirety.

---

[12] In any event, even if the Court could review the sentence within the range prescribed by state law, the Court would find no basis to conclude that petitioner's indeterminate sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of his criminal activity.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 21, 2010
Central Islip, New York

\*\*\*

Petitioner appears *pro se*. The attorneys for respondent are Michael J. Brennan and Thomas Costello, Assistant District Attorneys, Office of the District Attorney, Suffolk County, 200 Center Drive, Riverhead, NY 11901.